UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSHUA GOENS, an individual,<br><br>                              Plaintiff,<br>v.<br>VICTORIA BLOOD et al.,<br><br>                             Defendants. | Case No.: 19-CV-02299 W (KSC)<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO EXPUNGE LIS PENDENS AND FOR AWARD OF ATTORNEY'S FEES AND COSTS [DOC. 13]** |

     Pending before this Court is a motion to expunge a lis pendens and for an award of attorney's fees and costs filed by Defendants Victoria L. Blood and Vondell M. Forrester, each individually and as co-trustees of The Nathan A. Blood 1992 Trust. Plaintiff Joshua Goens opposes.

     The Court finds the matter is appropriate for decision on the papers submitted and without oral argument. See Civ.L.R. 7.1d1. For the following reasons, the Court **GRANTS** Defendant's motion to expunge Lis Pendens #1 and Lis Pendens #2 [Doc. 13] and **AWARDS** attorney's fees in the amount of $3,300.

## I. INTRODUCTION

On June 1, 2018, Plaintiff Joshua Goens entered into a lease agreement for commercial property located at 5909 Mission Gorge Road in San Diego, California. (*FAC* [Doc. 3] ¶ 11.) The property, along with 5901 and 5913 Mission Gorge Road, are owned by Defendants Victoria L. Blood and Vondell M. Forrester, as co-trustees of The Nathan A. Blood 1992 Trust (the "Trust"). (*Id.* ¶¶ 8, 13.)

In January 2019, Goens raised concerns with the Trust about the dilapidated condition of the property. (*FAC* ¶¶ 15, 16.) Specifically, Goens raised issues about "unsafe working conditions, mold remediation, and interior and exterior dilapidation." (*Id.* ¶ 17.) Goens spent "a great amount of time, energy and effort" remedying the problems. (*Id.* ¶ 18.) And in the months that followed, Defendants elicited his help evicting the previous master lessor who had caused problems at the property. (*Id.* ¶ 20.) Defendants also began talking to and treating Goens as if he were the property manager of 5901, 5909 and 5913 Mission Gorge Road (collectively referred to as, the "Subject Property"). (*Id.* ¶¶ 21–24.)

On June 1, 2019, Goens and Defendants entered a second Commercial Lease Agreement for 5909 ("Lease #1") for a term of two years. (*FAC* ¶¶ 25, 26.) Goens contends that before entering the agreement, the parties had many discussions regarding the property. (*Id.* ¶ 27.) According to Goens, there was also "a mutual oral agreement that [Goens] would be the master lessor of the Subject Property, and in time, obtain the lease to all three properties owned by Defendant: 5901, 5909, and 5913 Mission Gorge Road, San Diego, California, 92120." (*Id.* ¶ 28.) Additionally, before entering Lease #1, Defendants informed Goens that the "Subject Property was listed for sale, but expressly stated that 'it would not be sold, because it had been on and off the market for the past five years" and that "the sale of the property 'would not interfere with [Plaintiff's] lease term.'" (*Id.* ¶¶ 29, 30.)

On August 1, 2019, Goens and Defendants entered a Commercial Lease Agreement for 5901 Mission Gorge Road ("Lease #2"). (*FAC* ¶ 36.) Although the

parties never entered a lease for 5913 Mission Gorge Road, Goens acted as the property manager for the entire Subject Property. (*Id.* ¶¶ 37, 38.)

In approximately September 26, 2019, Goens became aware of a potential buyer for the Subject Property. (*FAC* ¶ 39.) Goens' attorney contacted Defendants' attorney to discuss "various issues at the Subject Property, including but not limited to, Defendants' representations regarding the sale of the Subject Property and potential settlement of any claims." (*Id.* 40.) Discussions were unsuccessful, and on November 1, 2019, Goens received a 60-day Notice to Quit for 5909 Mission Gorge Road. (*Id.* ¶¶ 41, 42.)

On December 3, 2019, Goens filed this lawsuit. (*See Compl.* [Doc. 1].) The FAC alleges sixteen causes of action: (1) breach of the implied covenant of good faith and fair dealing; (2) negligent misrepresentation; (3) intentional misrepresentation; (4) promissory estoppel; (5) unjust enrichment; (6) unfair business practices; (7) failure to pay minimum wage; (8) failure to reimburse business expenses; (9) intentional interference with contractual relations; (10) intentional interference with prospective economic relations; (11) defamation – slander per se; (12) defamation – slander per quod; (13) intentional infliction of emotional distress; (14) injunctive relief; (15) injunctive relief; and (16) reformation. (*See FAC.*) Causes of action one through thirteen seek monetary damages. (*Id.*) The fourteenth cause of action appears to seek an injunction preventing Defendants from breaching Lease #1 and Lease #2. (*Id.* ¶¶ 181–186.) The fifteenth cause of action seeks an injunction preventing Goens from losing possession of the Subject Property, and the sixteenth cause of action seeks reformation of Lease #1 and Lease #2 to conform to "the representations made by Defendants, stating that the Subject Property will not be sold during Plaintiff's term of lease." (*Id.* ¶¶ 187–204.)

On December 13, 2019, Goens recorded a Notice of Pendency of Action, Document Number 2019-0582227 of the Official Records of San Diego County ("Lis Pendens #1), and on December 18, 2019, Goens recorded a second Notice of Pendency of Action, Document Number 2019-0592937 of the Official Records of San Diego County for the Subject Property ("Lis Pendens #2"). Defendants now move to expunge the lis

pendens under California Code of Civil Procedure[1] §§ 405.31 and §405.32, and for payment of attorneys' fees related to the motion. Goens opposes the motion.

II. **STANDARD**

California Code of Civil Procedure § 405.20 provides that a "party to an action who asserts a real property claim may record a notice of pendency of action, in which the real property claim is alleged." A "'[r]eal property claim' means the cause or causes of action in a pleading, which would, if meritorious, affect (a) title to, or the right to possession of, specific real property...." Code Civ. Proc. § 405.4.

A party seeking to expunge a lis pendens may move under Code of Civil Procedure § 405.31 or § 405.32. Under section 405.31, "the court shall order the notice expunged if the court finds that the pleading on which the notice is based does not contain a real property claim." The analysis under this section is "analogous to, but more limited than, the analysis undertaken by a court on a demurrer. Rather than analyzing whether the pleading states any claim at all, as on a general demurrer, the court must undertake the more limited analysis of whether the pleading states a real property claim." BGJ Associates, LLC v. Superior Court, 75 Cal. App. 4th 952, 956 (1999) (quoting comments in Deering's and West's Annotated California Codes (hereinafter "Comment") to § 405.31).

Section 405.32 in contrast provides that "the court shall order the notice be expunged if the court finds that the claimant has not established by a preponderance of the evidence the probable validity of the real property claim." Under this section, evidence is used to determine "the probability the proponent will be able to establish a valid real property claim." BGJ Associates, LLC, 75 Cal.App.4th at 956–957 (quoting Comment to 405.32). "Probable validity" of a claim means that it is more likely than not

---

[1] All statutory references are to the California Code of Civil Procedure.

that the claimant will obtain a judgment against the Defendant on the claim. Code Civ. Proc. 405.3.

III. **ANALYSIS**

    A. **Under existing California law, Goens is not entitled to maintain the lis pendens.**

Goens contends the FAC alleges a real property claim because a "leasehold is an estate in real property and falls within the purview of an action concerning real property or affecting the title to, or the right of possession over the real property." (*Opp'n* [Doc. 20] 6:6–11.) Defendants disagree because most of the sixteen causes of action in the FAC seek monetary damages. (*P&A* [Doc. 13] 8:25–12:11.)

Under existing California case law, whether Goens has alleged a real property claim for purposes of section 405.20 is a close call. In Parker v. Superior Court, 9 Cal.App.3d 397 (1970), the court held that a leasehold is an estate in real property and "under the broad language of" the lis pendens statute, "an action concerning … the *right of possession of real property*…." Id. at 400 (italics in original). Because two of Goens' causes of action seek possession of real property under a leasehold interest, Parker supports a finding that Goens has pled a real property claim.

What complicates the issue is the more recent California Court of Appeal decision, BGJ Associates, LLC v. Superior Court, 75 Cal.App.4th 952 (1999), which limited the availability of a lis pendens. There, plaintiffs Robert Goldman and Jerome Janger agreed to form a joint venture with defendant Maynard Brittan to purchase certain real property. When plaintiffs expressed hesitation about the purchase, Brittan and defendant Jeff Wilson purchased the property. Plaintiffs then filed a complaint alleging eleven causes of action. Nine of the causes of action sought monetary damages. The last two causes of action sought the imposition of a constructive trust, and an order compelling defendants to convey to plaintiffs "'their interest in Parcel 1,' and 'an order granting [plaintiffs]

possession of Parcel 1.'" Id. at 965–66. Plaintiffs then filed a notice of lis pendens, and defendants moved to expunge the lis pendens.

The Court of Appeal began its analysis by discussing the history of the lis pendens statute:

> The history of the lis pendens legislation shows a legislative intent to restrict the common law notion of constructive notice [that an action has been filed affecting title or right to possession of the real property]. This is because of the ease with which a lis pendens can be recorded and the serious consequences flowing from it. Once a lis pendens is filed, it clouds the title and effectively prevents the property's transfer until the litigation is resolved or the lis pendens is expunged. Accordingly, a lis pendens is a provisional remedy which should be applied narrowly.

Id. at 966–67. The court also explained that because of the consequences flowing from a lis pendens, other California cases have "long recognized that … 'the lis pendens procedure [is] susceptible to serious abuse, providing unscrupulous plaintiffs with a powerful lever to force the settlement of groundless or malicious suits.'" Id. at 969 (brackets in original). Previous case law, therefore, declared that "lis pendens is not available in what 'is *essentially* a fraud action seeking money damages with additional allegations urged to support the equitable remedies of a constructive trust or an equitable lien." Id. at 970. Accordingly, in determining whether claims in the pleading affect title to or possession of specific real property, "courts have looked to the substance of the dispute to determine whether it is 'essentially' a fraud action seeking money damages, with constructive trust allegations 'appended.'" Id. at 971–72. Based on these principles, the court stated that "where the pleading combines theories of liability for monetary damages and for a constructive trust, we hold that plaintiffs should not be able to maintain a lis pendens. The danger is too great that a lis pendens, which effectively renders the property unmarketable, will have the coercive effects condemned by cases." Id. at 972

This case is more analogous to BGJ Associates because the vast majority of Goens' causes of action seek monetary damages; only two of the sixteen seek possession

of the Subject Property. Moreover, the BGJ Associates plaintiffs had a more significant property interest than Goens, because they sought title and not simply temporary possession. Yet the California Court of Appeal refused to find plaintiffs' interest in title sufficiently "affected" the property to constitute a real property claim under the lis pendens statute. Because Goens' interest in temporary possession of the Subject Property is less compelling than an interest in title, BGJ Associates supports the conclusion that Goens failed to sufficiently allege a real property claim under section 405.4.

### B. Goens has failed to establish the probability of success on his causes of action for injunctive relief and reformation.

Under section 405.32, the lis pendens must be expunged unless Goens establishes "by a preponderance of the evidence the probable validity of [his] real property claim."

Goens' real property claim is based on his causes of action seeking (1) injunctive relief to prevent the sale of the Subject Property until the end of the terms of the commercial lease agreements, and (2) reformation of the agreements due to Defendants' alleged fraudulent misrepresentations. (*Opp'n* 6:15–19.) In arguing the probable validity of these causes of action, Goens relies exclusively on the contention that the FAC adequately pleads fraudulent misrepresentation:

> Plaintiff's claim for injunctive relief and reformation of the lease agreement based on Defendants' fraudulent misrepresentation is properly plead and likely to obtain judgment. "A complaint for fraud must allege the following elements: (1) a knowingly false representation by the defendant; (2) an intent to deceive or induce reliance; (2) justifiable reliance by the plaintiff; and (4) resulting damages." (*Service by Medallion, Inc. v. Clorox Co.*, 44 Cal.App.4th 1807, 1816 (1996).) "In California, fraud must be pled specifically; general and conclusory allegations do not suffice." (*Lazar v. Superior Court*, 12 Cal. 4th 631, 645 (1996).) "The specificity required when pleading a cause of action for fraud necessitates pleading facts which show how, when, where, to whom, and by what means the representations were tendered." (*Id*.)

7

(*Id.* 8:22–9:8.) Goens' opposition then goes on to cite the supporting allegations in the FAC. (*Id.* 9:9–16, citing *FAC*, ¶¶ 29, 30, 91.) These paragraphs allege that before signing Lease #1, Defendants expressly stated that '[the property] would not be sold, because it had been on and off the market for the past five years'" and that when the lease agreement was signed, Defendants were aware the Subject Property was in the process of being sold, yet represented to Goens that "he would retain rights to use the subject property for the two (2) year term listed in the lease agreement signed on June 1, 2019." (*FAC*, ¶¶ 29, 30, 91.[2]) There are multiple problems with Goens' argument.

First, Goens appears to misconstrue section 405.32's requirement. The language of the statute requires that he establish the probable validity of his claims by "a preponderance of the evidence." Code Civ. Proc § 504.32. Goens has failed to submit any evidence supporting any of his claims. There is no evidence attached to his opposition. And although the FAC purports to cite numerous exhibits, there are no exhibits attached to the FAC. (*See FAC*.)

Goens' failure to submit evidence is made even more problematic by Defendants' submission of evidence contradicting the fraudulent misrepresentation claims. Specifically, the Addendum to Lease #1 explicitly notified Goens that 5909 Mission Gorge Road was for sale and Goens agreed to cooperate with the sale of the property:

> Lessee understands that Lessor has listed the Premises "For Sale." Lessee agrees to cooperate with Lessor or Lessor's broker for the purpose of showing the Premises to Buyers.

(*Blood Dec.* [Doc. 13-6] ¶ 5, *Ex. B* [Doc. 13-9] p. 1.) Similar language notifying Goens that 5901 Mission Gorge Road was for sale was also included in the Addendum to Lease #2. (*Blood Dec.* ¶ 10, *Ex. E* [Doc. 13-12] p. 1.) These provisions directly contradict the allegation that Defendants "expressly stated" the property would not be sold. The Addendums to Lease #1 and Lease #2 also provide that the "Lessor… shall have the right

---

[2] Paragraph 91 of the FAC reiterates the allegations in paragraphs 29 and 30.

8

to terminate this Lease with sixty (60) days' notice to Lessee." (*Ex. B* ¶ 52, *Ex. E.* ¶ 52.) This contradicts Goens' allegation that, in essence, he was guaranteed to remain on the Subject Property until the expiration the lease agreements.

Next, even if Goens' unsupported allegations in the FAC could be considered evidence, they do not establish the probable validity of Goens' real property claim. The FAC admits that before signing Lease #1, Defendants "informed [Goens] that the Subject Property was listed for sale, but expressly stated that it would not be sold, because it had been on and off the market for the past five years." (*FAC* ¶ 29.) While Goens appears to construe this statement as an unequivocal representation that the Subject Property would not be sold, a more reasonable interpretation is that Defendants were pessimistic about the prospect of selling the property given their experience over the past five years. Indeed, the equivocal nature of Defendants' representation is consistent with the next paragraph in the FAC alleging that "Defendants also assured [Goens] prior to signing of the two-year commercial lease agreement, that *the sale of the property* 'would not interfere with [his] lease term.'" (*Id.* ¶ 30, emphasis added.) This allegation necessarily admits that Goens understood the property might sell during his lease.

Finally, Defendants also argue that Goens cannot prevail on his claim because the lease agreements include an integration clause that provides in relevant part:

> **No Prior or Other Agreements; Broker Disclaimer.** This Lease contains all agreements between the Parties with respect to any matter mentioned herein, and no other prior or contemporaneous agreement or understanding shall be effective.

(*Blood Decl.* ¶¶ 4, 9, *Ex. A* [Doc. 13-8] ¶ 22; *Ex. D* [Doc. 13-11] ¶ 22.) Tenant Estoppel Certificates that Goens signed in connection with Lease #1 and Lease #2 reiterated the integration clause:

> The Tenant represents that the original Lease remains in full force and effect and constitutes the entire agreement between Tenant and Landlord…There are no verbal or written agreements or understandings between Landlord and Tenant with respect to the Premises, except as set forth above.

9

(*Blood Decl.* ¶¶ 6, 11, *Ex. C* [Doc. 13-10] ¶ 2; *Ex. F* [Doc. 13-11] ¶ 2.) According to Defendants, "[w]hen a written agreement is complete and integrated, parol evidence, such as what Plaintiff is attempting to utilize here with the alleged oral representations, cannot be used to add or vary its terms. [Citations omitted.]" (*P&A* 13:25–14:3.) Goens responds that because the parol evidence rule "was designed to prevent fraud, [it] may not be used as a shield, aid or protect a party who relies on it in perpetration of a fraud. [Citation omitted.]" (*Opp'n* 10:19–22.) Thus, Goens argues the parol evidence rule does not apply, and the Court may grant the causes of action for injunctive relief and reformation based on Defendants' alleged misrepresentations. (*Id.* 11:8–12:5.)

California's parol evidence rule is codified in Code of Civil Procedure § 1856, which provides in relevant part:

> (a) Terms set forth in a writing intended by the parties as a final expression of their agreement with respect to the terms included therein may not be contradicted by evidence of a prior agreement or of a contemporaneous oral agreement.

However, subdivision (f) sets forth a broad exception to the rule "[w]here the validity of the agreement is the fact in dispute…." Subdivision (g) further provides that the parol evidence rule does not "exclude other evidence of the circumstances under which the agreement was made … to establish … illegality or fraud." The California Supreme Court explained the reason for this exception to the parol evidence rule:

> This provision rests on the principle that the parol evidence rule, intended to protect the terms of a valid written contract, should not bar evidence challenging the validity of the agreement itself. "Evidence to prove that the instrument is void or voidable for mistake, fraud, duress, undue influence, illegality, alteration, lack of consideration, or another invalidating cause is admissible. This evidence does not contradict the terms of an effective integration, because it shows that the purported instrument has no legal effect." (2 Witkin, Cal. Evidence (5th ed. 2012) Documentary Evidence, § 97, p. 242; see also id., §§ 66 & 72, pp. 206 & 211.)

Riverisland Cold Storage, Inc. v. Fresno-Madera Production Credit Association, 55 Cal.4th 1169, 1175–76 (2013).

In their reply, Defendants argue that although Goens is alleging fraud in connection with the formation of the lease agreements, the fraud exception to the parol evidence rule does not apply because he is not seeking to void the leases, but instead to enforce the oral agreements. (*Reply* [Doc. 22] 6:10–17.) This Court agrees. Although Riverisland did not explicitly hold that the fraud exception does not apply where the plaintiff is seeking to reform a written agreement, its explanation recognizes that the exception is allowed to show the "instrument is void or voidable" and that evidence of fraud is admissible to "show[] that the purported instrument has no legal effect." Id. at 1175.

Defendants also point out that at least two district courts in California have interpreted Riverisland's explanation to preclude the fraud exception in cases where the plaintiff is not seeking to void the contract, but instead to enforce an oral agreement / representation. See Clear Connection Corp. v. Comcast Cable Communs. Mgmt., 2013 WL 6275313 (E.D. Cal. Dec. 4, 2013) (fraud exception to parol evidence does not apply because plaintiff "does not seek to invalidate the contract; to the contrary… [it] seeks, via compensatory damages, to enforce the alleged oral promises…."); Groth-Hill Land Company v. General Motors, LLC, 2013 WL 3853160, *15 (N.D. Cal. Jul. 23, 2013) (fraud exception to parol evidence rule does not apply where plaintiff is not attacking the written agreement's validity, but instead "seek[s] to recover based on promises [defendant] allegedly made to them over the phone…."). Because Goens seeks to enforce the alleged oral agreement allowing him to remain on the Subject Property until the expiration of the lease agreements, and not simply invalidate the leases, the fraud exception to the parol evidence rule does not apply. For this additional reason, the Court finds Goens failed to establish that he will likely prevail on his causes of action for injunctive relief and reformation.

19-CV-02299 W (KSC)

## IV. ATTORNEY'S FEES & COSTS

Defendants also seek an award of attorney's fees and costs for bringing the motion to expunge. Under section 405.38, a party that successfully moves to expunge a lis pendens is entitled to an award of reasonable attorney's fees and costs "unless the court finds that the other party acted with substantial justification or that other circumstances make the imposition of attorney's fees and costs unjust."

Because Goens failed to provide evidence supporting his claims, the Court finds Defendants are entitled to an award of attorney's fees. However, as discussed above, whether Goens pled a real property claim under section 405.31 is a difficult question under California law. Under these circumstances, the Court finds an award of $3,300 in attorney's fees is reasonable.[3]

## V. CONCLUSION & ORDER

For the reasons set forth above, the Court **GRANTS** Defendant's motion to expunge [Doc. 13] and **ORDERS** as follows:

1. The notices of pendency of action (lis pendens) as (1) Document Number 2019-0582227, recorded on December 13, 2019, and (2) Document Number 2019-0592937, recorded on December 18, 2019, both in the office of the County Recorder of San Diego County, are expunged.

2. Plaintiff Joshua Goens shall pay Defendants $3,300 in attorney's fees.

3. Any Notice of Pendency of Action or Lis Pendens filed by the Plaintiff Joshua Goens in relation to this matter shall be expunged, forthwith.

4. A copy of this Order may be filed with the San Diego County Recorder's Office and the applicable chain of title for the property described as 5901, 5909, and 5913 Mission Gorge Road, San Diego, CA 92120 ("Property"), and more particularly described and identified as follows:

---

[3] Although Defendants' motion also requests costs, they did not identify any costs in the motion.

Those portions of Lots 1 and 2, in Block 46 of the "Amended Map No. 1 of GRANTVILLE and Out Lots," in the City of San Diego, State of California, according to Map thereof No. 776, filed in the Office of the County Recorder of San Diego County, February 16, 1894, described as follows:

Commencing at the Northwest corner of Lot 1 in said Block 46: thence North 89°36'20" (Record North 89°40'45" East) along the Northerly line of Lots 1 and 2 in said Block 46, to its intersection with the Southeasterly line of County Road Survey No. 1287 as said Road is described in deed to the County of San Diego, dated December 15, 1950 and recorded in Book 3935, Page 468 of Official Records being the TRUE POINT OF BEGINNING; thence continuing North 89°36'20" East along the Northerly line of said Lot 2, a distance of 214.53 feet to. the Northwest corner of land conveyed to Earl L. Hafer, et ux, by deed dated February 18, 1995, and recorded in Book 5561, Page 368 of Official Records; thence along the boundary of said land, South 13°30'30" East, 279.00 feet to the Northerly line of a parcel of land described in deed to Jules C. Jaussaud, et ux. dated November 30, 1939, and recorded in Book 1000, Page 114 of Official Records; thence along said Northerly line South 89°36'20" West 352.68 feet to the Southeast corner of the land conveyed to Dale Arthur Worm, et ux, dated July 19, 1951, and recorded in Book 4201, Page 112 of Official Records; thence along the Easterly line of said land 64°43'40" East to the TRUE POINT OF BEGINNING.

Assessor's Parcel No.: 461-320-06-00

**IT IS SO ORDERED.**

Dated: January 31, 2020

Hon. Thomas J. Whelan
United States District Judge